IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

BRENDA VALENCIA, DINA JOSEPH,
on behalf of themselves and all others similarly
situated,

    Plaintiffs,

vs.

NORTH BROWARD HOSPITAL DISTRICT
d/b/a BROWARD HEALTH,

    Defendant.
_____/

**DEFENDANT'S NOTICE OF REMOVAL**

Pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453, Defendant North Broward Hospital District d/b/a Broward Health ("Broward Health") hereby files this Notice of Removal of the action filed by Brenda Valencia and Dina Joseph ("Plaintiffs"), on behalf of themselves and all others similarly situated, in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, Case No. CACE-22-000336, to the United States District Court for the Southern District of Florida.

**JURISDICTION AND VENUE**

This is a civil action over which this Court has original subject matter jurisdiction under 28 U.S.C. § 1332, and removal is proper under the Class Action Fairness Act of 2005 ("CAFA"), codified in pertinent part at 28 U.S.C. § 1332(d). This Court is in the judicial district and division embracing the place where the state court case was brought and is pending. Thus, this Court is the proper district court to which this case should be removed. 28 U.S.C. §§ 1441(a), 1446(a).

1

## THE ACTION & TIMELINESS OF REMOVAL

**I.       Factual and procedural background**

On January 7, 2022, Plaintiffs, on behalf of themselves and all others similarly situated, filed a Class Action Complaint against Broward Health in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, Case No. CACE-22-000336 (the "State Court Action"). Plaintiffs filed the Complaint as a putative class action. A true and correct copy of the Complaint in the State Court Action is attached as **Exhibit 1**.

On March 8, 2022, Broward Health filed an Agreed Waiver of Issuance of Summons and Service of Process. A true and correct copy of the Agreed Waiver of Issuance of Summons and Service of Process is attached as **Exhibit 2**. A copy of the docket in the State Court Action is attached as **Exhibit 3**. Pursuant to 28 U.S.C § 1446(a), all other process, pleadings, and orders that have been filed and served in the State Court Action are attached to this Notice of Removal as **Exhibit 4**. The civil cover sheet is attached as **Exhibit 5**.

This removal is timely because Broward Health filed this removal within thirty days of filing the Agreed Waiver of Issuance of Summons and Service of Process. *See* 28 U.S.C. § 1446(b) (notice of removal shall be filed within thirty days of service); *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 348 (1999) (stating that the time period for removal begins when the defendant is served).

**II.      CAFA jurisdiction**

This Court has original jurisdiction over this State Court Action under CAFA (codified in pertinent part at 28 U.S.C. § 1332(d)). Section 1332(d) provides that a district court shall have original jurisdiction over a class action with one hundred (100) or more putative class members, in which the matter in controversy, in the aggregate, exceeds the sum or value of $5,000,000.

Section 1332(d) further provides that, for original jurisdiction to exist, "any member of a class of plaintiffs" must be a "citizen of a State different from any Defendant." 28 U.S.C. § 1332(d)(2)(A).

Notably, two nearly *identical* putative class action complaints have been directly filed in the Southern District of Florida and allege the Court has subject matter jurisdiction pursuant to CAFA. In *Walecki v. North Broward Hospital District*, the Plaintiff alleges:

> [t]his Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million exclusive of interest and costs. There are more than 100 putative class members and at least some members of the proposed Class, including Plaintiff, have a different citizenship from Broward Health. . . .

*Walecki v. North Broward Hospital District*, Case No. 0:22-cv-60083-WPD (S.D. Fla. filed January 12, 2022) (consolidated with *Esterly v. North Broward Hospital District*, Case No. 0:22-cv-60055-WPD (S.D. Fla. filed January 8, 2022))[1] (Walecki Compl., attached as **Exhibit 6**, ¶ 27).[2] *Esterly* is the other putative class action filed and pending in the Southern District of Florida under CAFA with a nearly identical class definition. *Esterly* and *Walecki* were consolidated under Case

---

[1] In total, there are currently nine filed class actions based on the same alleged data incident. *See Hunter v. North Broward Hospital District*, CACE-22-000372 (Fla. 17th Cir. Ct. filed January 7, 2022) (complaint attached as **Exhibit 7**); *Esterly v. North Broward Hospital District*, Case No. 0:22-cv-60055-WPD (S.D. Fla. filed January 8, 2022) (complaint attached as **Exhibit 8**); *Prizer & Sims v. North Broward Hospital District*, Case No. 0:22-60422-CIV-DIMITROULEAS (S.D. Fla. filed January 11, 2022) (complaint attached as **Exhibit 9**); *Walecki*, Case No. 0:22-cv-60083-WPD (consolidated with *Esterly*, Case No. 0:22-cv-60055-WPD) (complaint attached as **Exhibit 6**); *Hale v. North Broward Hospital District*, 0:22-cv-60362-DPG (S.D. Fla. filed January 12, 2022) (complaint attached as **Exhibit 10**); *Beck v. North Broward Hospital District*, CACE-22-000803 (Fla. 17th Cir. Ct. filed January 18, 2022) (complaint attached as **Exhibit 11**); *Levy & Leslie v. North Broward Hospital District*, CACE-22-000857 (Fla. 17th Cir. Ct. filed January 19, 2022) (complaint attached as **Exhibit 12**); *Caraganis et al. v. North Broward Hospital District*, CACE-22-000869 (Fla. 17th Cir. Ct. filed January 19, 2022) (complaint attached as **Exhibit 13**).

[2] Notably, a district court may take judicial notice of public records and public court dockets. *See Aldar Tobacco Grp., LLC v. Am. Cigarette Co., Inc.*, No. 08-62018-CIV, 2017 WL 8794599, at *1 (S.D. Fla. Sept. 20, 2017) (citing *Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010) ("A court may take judicial notice of public records, including public court dockets.")).

No. 22-cv-60055-WPD. *See Esterly*, Case No. 0:22-cv-60055-WPD [DE 10]. Case No. 22-cv-60083-WPD has been administratively closed. *Id.* In *Esterly*, the plaintiff similarly alleges:

> This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million exclusive of interest and costs. There are more than 100 putative class members and at least some members of the proposed Class have a different citizenship from Broward Health. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because all claims alleged herein form part of the same case or controversy.

(**Exhibit 8**, ¶ 7).

The claims asserted in *Walecki* and *Esterly* are based on nearly identical facts giving rise to the state court claims asserted in this State Court Action, and both complaints include counts for negligence, negligence *per se*, breach of contract, breach of implied contract, breach of confidence, unjust enrichment, and declaratory judgment. Additionally, the putative class definition and size in *Walecki* is substantively identical to this State Court Action, encompassing "[a]ll persons who reside in the United States whose Sensitive Information was compromised by the Data Breach" and comprises roughly 1.3 million individuals. (**Exhibit 6**, ¶¶ 87, 92). The putative class definition in *Esterly* is "[a]ll individuals whose personal information was compromised in the Data Breach . . . ." (**Exhibit 8**, ¶ 96).

Thus, pursuant to 28 U.S.C. § 1332(d) and § 1441(a), this Court has subject matter jurisdiction over this State Court Action filed by Brenda Valencia and Dina Joseph, on behalf of themselves and all others similarly situated, pursuant to CAFA because: (i) this State Court Action is pleaded as a class action; (ii) the putative class includes more than one hundred (100) members; (iii) members of the putative class are citizens of a state different from that of Defendant; and (iv) the matter in controversy, in the aggregate, exceeds the sum or value of $5,000,000, exclusive of interest and costs.

4

    a.    *The action is pleaded as a class action.*

CAFA defines a "class action" as "any class action filed under rule 23 of the Federal Rules of Civil Procedure *or similar State* statute or *rule of judicial procedure* authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B) (emphasis supplied).

Plaintiffs bring the State Court Action as a "class action" and seeks class certification under Florida law pursuant to Rule 1.220, Florida Rules of Civil Procedure. (Compl., attached as **Exhibit 1**, ¶¶ 94–109). "Florida's Class Action rule, Florida Rule of Civil Procedure 1.220, is based on Federal Rule of Civil Procedure 23," *see Concerned Class Members v. Sailfish Point, Inc.*, 704 So. 2d 200 (Fla. 4th DCA 1998), therefore, the first CAFA requirement is met. (Compl. ¶ 94) ("Plaintiffs brings this nationwide class action lawsuit on behalf of themselves and on behalf of all others similarly situated . . . .").

    b.    *The putative class includes at least one hundred (100) members.*

Plaintiffs define the Class as "[a]ll individuals whose PII and/or PHI was accessed and/or exfiltrated during the data incident referenced in the Website Notice (the 'Nationwide Class')." (Compl. ¶ 95). Plaintiffs assert that "[o]n January 2, 2022, Defendant notified the Maine Attorney General that 1,357,879 individuals were affected by the Data Incident." *Id.* ¶ 98 (emphasis supplied) (the 1,357,879 putative class members are hereinafter referred to as the "Class Member(s)"). Therefore, the number of Class Members clearly exceeds the statutorily required minimum of 100 members.

    c.    *Minimal diversity of citizenship exists.*

Pursuant to 28 U.S.C. § 1332(d)(2)(A), the "district court shall have original jurisdiction" over a "class in which . . . any member of the class of plaintiffs is a citizen of a State different from

any defendant." As such, only one member of the putative class must be diverse for diversity of citizenship to be satisfied under CAFA. *Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1163 (11th Cir. 2006) (internal citation omitted) ("Under CAFA, federal courts now have original jurisdiction over class actions in which the amount in controversy exceeds $5,000,000 and there is minimal diversity (at least one plaintiff and one defendant are from different states)").

While Plaintiffs allege that they are citizens of Florida, the putative class they seek to represent is much broader, as it encompasses 1,357,879 individuals that were allegedly impacted by the data incident. Approximately twenty-eight states (including state attorneys general and state agencies) have been placed on notice of the data incident based on residents of their respective states potentially affected by the data incident. *See* Declaration ¶ 7 (attached as **Exhibit 14**). Broward Health also sent written notice to individual addresses in all fifty states, the District of Columbia, and Puerto Rico as well as to international addresses. *Id.* In fact, Plaintiffs cite to the Office of the Maine Attorney General's website, which identifies 473 Maine residents potentially affected. (Compl. ¶ 40 n.17). Additionally, in the *Walecki* action, which encompasses the nearly identical putative class, Walecki alleges she "is a natural person domiciled in the State of Virginia [and] [h]er permanent residence is located in the State of Virginia." (**Exhibit 6**, ¶ 13). Thus, as Walecki also falls within the class definition in this case, at least one of the Class Members is a non-Florida citizen.

Pursuant to 28 U.S.C. § 1332(c), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." The United States Supreme Court has concluded that a corporation's "principal place of business" is "where a corporation's officers direct, control, and coordinate the corporation's activities," *i.e.*, the corporation's "nerve center." *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010). In practice,

the nerve center is normally "the place where the corporation maintains its headquarters . . . ." *Id.* at 93. "The public often (though not always) considers it the corporation's main place of business." *Id.* Broward Health is a special independent taxing district created pursuant to Florida Statutes for the purpose of establishing and operating the necessary health facilities for the preservation of the public health and well-being of the citizens of Broward County, Florida. Accordingly, pursuant to *Hertz*'s nerve center test, Broward Health's principal place of business is in Broward County, Florida, and its corporate headquarters are located at 1800 NW 49th Street, Suite 110, Fort Lauderdale, Florida 33309. (Compl. ¶ 17). Thus, Broward Health is a citizen of the State of Florida.

In sum, minimal diversity exists pursuant to CAFA because Defendant is a citizen of the State of Florida, and at least one of the Class Members is a citizen of a state other than Florida.

        d.     *The amount in controversy exceeds the CAFA threshold.*

As a preliminary matter, the amounts set forth in this Notice of Removal are solely for purpose of establishing that the *amount in controversy* exceeds the $5,000,000 threshold and are not intended to—and cannot be construed as—an admission that Plaintiffs can state a claim, establish Article III standing, or are entitled to damages in any amount or not otherwise subject to the statutory caps under Section 768.28, Florida Statutes.[3] *See S. Fla. Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1315 (11th Cir. 2014) (internal citations omitted) ("What counts is the amount in controversy at the time of removal. It is less a prediction of 'how much the plaintiffs are ultimately likely to recover,' than it is an estimate of how much will be put at issue during the litigation . . . ."). Defendant denies liability, denies that Plaintiffs are entitled to recover any amount, and denies that a class can be properly certified in this matter.

---

[3]     *See* "Impact of Sovereign Immunity" section discussed *infra* at 13–14.

Where a complaint does not specify the amount of damages sought, the removing defendant must demonstrate by a preponderance of the evidence that the jurisdictional amount in controversy is satisfied. 28 U.S.C. § 1446(c)(2)(B); *see also Anderson v. Wilco Life Ins. Co.*, 943 F.3d 917, 925 (11th Cir. 2019) (internal citations omitted) ("When the plaintiff contests or the court questions the defendant's allegation, the defendant must prove by a preponderance of the evidence that the amount in controversy is sufficient."). "[A] defendant's notice of removal need include only a *plausible allegation* that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) (emphasis supplied). To determine whether the defendant has met its burden, "a court may rely on evidence put forward by the removing defendant, as well as reasonable inferences and deductions drawn from that evidence." *Anderson*, 943 F.3d at 925 (internal citation omitted).

Here, the Complaint states that the amount in controversy exceeds $30,000[4] but does not specify the total amount of damages sought. (Compl. ¶ 20). At 1,357,879 Class Members, the damages and relief sought by the Class Members need only average *$3.69* per Class Member to satisfy the $5,000,000 amount in controversy requirement. Walecki alleges in her complaint, which arises out of the same underlying alleged data incident, that "[t]he amount in controversy exceeds $5 million exclusive of interest and costs." (**Exhibit 6**, ¶ 27). Thus, for this reason and those discussed below, the allegations in the Complaint make it more likely than not that the amount in controversy requirement under CAFA is satisfied.

Under each count of the Complaint, Plaintiffs seek "actual, consequential, and nominal damages and injunctive relief." (Compl. ¶¶ 145, 156, 163). Plaintiffs allege:

---

[4]   $30,000 is the current jurisdictional threshold for Florida circuit court jurisdiction. Fla. Stat. § 34.01(1)(c)(2); *see also* Fla. Stat. § 26.012(2)(a).

> Plaintiffs and Class Members have suffered numerous actual and imminent injuries as a direct result of the Data Breach, including: (a) theft of their PII and PHI; (b) costs associated with the detection and prevention of identity theft; (c) costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the consequences of the Data Incident; (d) invasion of privacy; (e) the emotional distress, stress, nuisance, and annoyance of responding to, and resulting from, the Data Incident; (f) the actual and/or imminent injury arising from actual and/or potential fraud and identity theft posed by their personal data being placed in the hands of the ill-intentioned hackers and/or criminals; (g) damages to and diminution in value of their personal data entrusted to Defendant with the mutual understanding that Defendant would safeguard Plaintiffs' and Class Members' PII and PHI against theft and not allow access and misuse of their personal data by others; and (h) the continued risk to their PII and PHI, which remains in the possession of Defendant, and which is subject to further breaches, so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiffs' and Class Members' PII and PHI, and, at the very least, are entitled to nominal damages.

(Compl. ¶ 13). Plaintiffs and Class Members state that they "face *years of constant surveillance* of their financial and personal records, monitoring, and loss of rights. . . ." *Id.* ¶ 66 (emphasis supplied). Further, the Complaint states that "Plaintiff suffered *lost time*, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of her privacy." *Id.* ¶ 91 (emphasis supplied). In Count II for breach of contract, Plaintiff and Class Members claim:

> As a direct and proximate result of Defendant's above-described breach of contract, Plaintiffs and the Nationwide Class have suffered (and will continue to suffer) ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; loss of the confidentiality of the stolen confidential data; the illegal sale of the compromised data on the dark web; expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports; expenses and/or time spent initiating fraud alerts, decreased credit scores and ratings; *lost work time*; and other economic and non-economic harm.

*Id.* ¶ 154 (emphasis supplied).

As a part of their damages discussed above, Plaintiffs and Class Members assert that they lost work time. *Id*. Thus, even taking the minimum wage in Florida, multiplied by just thirty

9

minutes of alleged time spent, the amount in controversy would exceed $5,000,000. Specifically, effective September 30, 2021, the Florida minimum wage became $10.00 per hour.[5] As the minimum wage in Florida is $10.00 an hour, compensation for *only thirty minutes* of time spent by each of the 1,357,879 Class Members, on an individual or average basis, equals $6,789,395. Therefore, for purposes of calculating the amount in controversy, the inference that the Class Members on average will spend thirty minutes to allegedly address the data incident is inherently rational and logical, and the Court can logically infer that the monetary value of the average time spent on such matters, alone, would satisfy the amount in controversy requirement.

In Count I for negligence, Plaintiffs allege:

> As a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiffs and the Nationwide Class have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity of how their PII and PHI is used; (iii) the compromise, publication, and/or theft of their PII and PHI; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII and PHI; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the present and future consequences of the Data Incident, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their PII and PHI, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fail to undertake appropriate and adequate measures to protect the current and former patients' and employee's PII and PHI in its continued possession; and (viii) present and future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII and PHI compromised as a result of the Data Incident for the <u>*remainder of the lives*</u> of Plaintiffs and the Nationwide Class.

---

[5] https://floridajobs.org/docs/default-source/business-growth-and-partnerships/for-employers/posters-and-required-notices/2021-minimum-wage/september-2021/florida-minimum-wage-september-2021-announcement.pdf?sfvrsn=c12151b0_4.

(Compl. ¶ 141) (emphasis supplied). Specifically, Plaintiffs and the Class Members seek "out-of-pocket expenses" and the "present and future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII and PHI compromised as a result of the Data Incident for the *remainder of the lives* of Plaintiffs and the Nationwide Class." *Id.* (emphasis supplied). They also allege that "[a]lthough Defendant has offered its current and former patients and employees a two-year membership of Experian's IdentityWorks, the offered services are *inadequate* to protect Plaintiffs and Class Members from the threats they face for years to come, particularly in light of the PII and PHI at issue here." *Id.* ¶ 68 (emphasis supplied).

To prevent and detect allegedly impacted private information, Equifax, LifeLock, and Experian are three identity-protection agencies that advertise monthly rates for credit-monitoring services ranging from $8.99 to $19.99 per person per month. For example, LifeLock offers a product that provides 1-Bureau credit monitoring with up to $25,000 in "stolen funds reimbursement" for $8.99 per month for the first year.[6] Equifax and Experian also offer products that provide 3-Bureau credit monitoring with up to one million in identity theft insurance for approximately twenty dollars per month.[7] Plaintiffs and Class Members are seeking monitoring for **the remainder of their lives**. Multiplying the cost of providing only one month of credit-

---

[6] The LifeLock Standard option paid monthly starts at $8.99 per month for the first year and renews at $11.99 per month. *See* https://www.lifelock.com/lp/sem/semidt-b-mbg-lsa?promocode=BSEM60MBGCBU&om_sem_cid=hho_sem_sy:us:bng:en:e:br:ll&utm_source=bing&utm_medium=cpc&utm_campaign=304067836&adgroup=1297423769623682&utm_term=lifelock&matchtype=e&utm_content=81089046242792&network=o&device=c&adp=&testgroup=&gclid=baf3971fc74613643f1df6eff7b58005&gclsrc=3p.ds&msclkid=baf3971fc74613643f1df6eff7b58005.

[7] The credit monitoring offered with Equifax is $4.95 for the first 30 days and then $19.95 per month. *See* https://www.equifax.com/equifax-complete/Equifax/?CID=2_equifax%20credit%20monitoring_G_e&adID=502355. Experian CreditLock is free for the first 30 days and then $19.99 per month. *See* https://www.experian.com/lp/creditlock.html?bcd=ad_c_sem_427_515842009606.

monitoring services at $8.99, for example, by 1,357,879 Class Members, the amount in controversy for credit monitoring is $12,207,332.20.

In addition to the damages discussed above, in their Prayer for Relief, Plaintiffs also seek injunctive relief. The Eleventh Circuit has held that "[f]or amount in controversy purposes, the value of injunctive or declaratory relief is the 'value of the object of the litigation' measured from the plaintiff's perspective." *Anderson v. Wilco Life Ins. Co.*, 943 F.3d 917, 925 (11th Cir. 2019) (internal citations omitted). In other words, "the value of the requested injunctive relief is the monetary value of the benefit that would flow to the plaintiff if the injunction were granted." *Id.* (internal citation omitted). Here, in part, Plaintiffs seek to require Defendant "to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing . . . " and "engage independent third-party security auditors and internal personnel to run automated security monitoring . . . ." Adding these costs to the costs associated with Plaintiffs' claims for lost time, credit monitoring, and other categories of damages, the total amount in controversy exceeds CAFA's jurisdictional threshold of $5,000,000.

As another category of damages, Plaintiffs allege that "[a]s a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiffs and the Nationwide Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses." (Compl. ¶ 142). Notably, courts have considered claims for emotional distress in determining the amount in controversy. *Barnes v. JetBlue Airways Corp.*, No. 07-60441, 2007 WL 1362504, at *2 (S.D. Fla. May 7, 2007); *Brown v. Cunningham Lindsey U.S.*, Inc., No. 305CV141J32HTS, 2005 WL 1126670, at *5 (M.D. Fla. May 11, 2005).

## **IMPACT OF SOVEREIGN IMMUNITY**

Under well-settled Florida law, the state and its agencies or subdivisions are entitled to sovereign immunity. *See* Fla. Stat. § 768.28(1). Section 768.28(1) states:

> [i]n accordance with s. 13, Art. X of the State Constitution, the state, for itself and for its agencies or subdivisions, hereby waives sovereign immunity for liability for torts, but *only to the extent specified in this act*. Actions at law against the state or any of its agencies or subdivisions to recover damages in tort for money damages against the state or its agencies or subdivisions for *injury or loss of property, personal injury, or death caused by the negligent or wrongful act or omission* of any employee of the agency or subdivision while acting within the scope of the employee's office or employment under circumstances in which the state or such agency or subdivision, if a private person, would be liable to the claimant, in accordance with the general laws of this state, may be prosecuted *subject to the limitations specified in this act*. . . .

(emphasis supplied).

Here, North Broward Hospital District d/b/a Broward Health is a special independent taxing district created pursuant to Chapter 27438, Laws of Florida, Special Acts of 1951, as amended. Plaintiffs are not seeking damages for the loss of property, personal injury, or death caused by the negligent or wrongful act or omission. Accordingly, Broward Health has not waived sovereign immunity and all of Plaintiffs' claims on behalf of themselves and the Class Members are barred.

Section 768.28(5)(a) also provides that "[n]either the state nor its agencies or subdivisions shall be liable to pay a claim or a judgment by any one person which exceeds the sum of $200,000 or any claim or judgment, or portions thereof, which, when totaled with all other claims or judgments paid by the state or its agencies or subdivisions arising out of the same incident or occurrence, exceeds the sum of $300,000." Thus, even if Plaintiffs' claims are not entirely barred,

Plaintiffs recovery from Broward Health for their and the Class Members' tort claims is, subject to Section 768.28(5), capped at $300,000 for the aggregate of the class.[8]

## NOTICE

As required by 28 U.S.C. 1446(d), Defendant is providing written notice of the filing of this Notice of Removal to Plaintiffs and is filing a copy of this Notice of Removal with the Clerk of the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida.

Respectfully submitted,

/s/ *Peter R. Goldman*
Peter R. Goldman
Florida Bar No. 860565
Nina Welch
Florida Bar No. 118900
Danna Khawam
Florida Bar No. 1025114
Nelson Mulllins
100 S.E. Third Avenue, Suite 2700
Fort Lauderdale, Florida 33394
Phone: (952)764-7060 / Fax: (954)761-8135
peter.goldman@nelsonmullins.com
nina.welch@nelsonmullins.com
danna.khawam@nelsonmullins.com

AND

Mark L. Krotoski
Phillip Wiese
MORGAN, LEWIS & BOCKIUS LLP
1400 Page Mill Road
Palo Alto, California 94304
Phone: (650) 843-4000
mark.krotoski@morganlewis.com
phillip.wiese@morganlewis.com
*pro hac vice application forthcoming*

---

[8]   Broward Health preserves all defenses, including, without limitation, under Section 768.28, Florida Statutes, and that Plaintiffs and Class Members lack Article III standing.

*Counsel for North Broward Hospital
District d/b/a Broward Health*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 11th, 2022 the foregoing document was filed with the Clerk of the Court using CM/ECF. I further certify that the foregoing document was served on counsel whom have provided designated e-mail addresses for service via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Peter R. Goldman*
Peter R. Goldman